# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

VIRRINNIA C.[1],

                                    Plaintiff,

    v.                                                         6:17-CV-595 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

---

MICHAEL J. WELCH, ESQ., for Plaintiff
ARIELLA R. ZOLTAN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed[2] applications for Disability Insurance Benefits ("DIB")

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

and Supplemental Security Income ("SSI") on December 13, 2013, alleging disability beginning January 8, 2013. (Administrative Transcript ("T") at 9, 252-267). Her applications were denied initially on February 14, 2014. (T. 134-51). Administrative Law Judge ("ALJ") Laura Michalec Olszewski conducted a hearing on April 17, 2015, at which plaintiff and Vocational Expert ("VE") Josiah L. Pearson testified. (T. 53-133).

In a decision dated October 14, 2015, the ALJ found that plaintiff was not disabled. (T. 6-25). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 28, 2017. (T. 1-5).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

2

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id*. However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. <u>FACTS</u>

As of the date of the April 17, 2015 administrative hearing, plaintiff was 48 years old. (T. 58). She resided alone, but her college-age sons visited frequently and helped

4

with her with tasks and appointments. (T. 59-60).  Plaintiff completed the twelfth grade in regular education classes, prior to joining the workforce. (T. 81, 290).  She had held a number of positions, including a machine operator on an assembly line, a delivery driver for a courier service, a housekeeper, and a retail sales associate. (T. 290, 310-317).  Most recently, she was self-employed, running a licensed day care service out of her home. (T. 64-65, 314).

On January 8, 2013, plaintiff was injured in an automobile accident, when the car that she was driving was rear-ended by a tractor trailer. (T. 363, 718).  As a result, plaintiff suffered significant neck and shoulder pain from a large cervical disc herniation, along with recurring migraine headaches and dizziness. (T. 65-66, 718, 739).  In August 2014, plaintiff underwent surgery to relieve the compression of her spinal cord. (T. 739).  Plaintiff reported that this surgery had alleviated both her migraines and her neck pain, but that she still felt occasional sharp headaches and dizziness. (T. 771-773).  Due to these impairments, plaintiff no longer drove. (T. 60).  She had not returned to work, but had received training to work as a patient transporter[3] in a nursing home on a part-time basis. (T. 74-75, 773).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 9-20).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

---

[3] As described by plaintiff, the position required pushing patients' wheelchairs from one room to another and performing minor housekeeping tasks. (T. 74-75).

5

## IV. **THE ALJ'S DECISION**

After finding that plaintiff met the insured status requirements through September 30, 2017, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 8, 2013. (T. 12). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: cervicalgia (neck pain) and migraine headaches. (*Id*.) At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 12-13).

The ALJ found at step four of the analysis that plaintiff could perform less than the full range of sedentary work. (T. 13-18). Specifically, plaintiff could lift and/or carry ten pounds occasionally, sit for six hours and stand for two hours in an eight hour day, but needed to be allowed to change positions at will while remaining on task. (T. 13). Plaintiff could only occasionally reach but could frequently handle, finger, and feel with either hand. (T. 13). Plaintiff could never climb ladders or scaffolds, and should not work at unprotected heights or perform other tasks that required her to balance. (T. 13). She could occasionally climb ramps or stairs. (*Id*.) She could occasionally stoop but should never kneel, crouch crawl or operate a motor vehicle. (*Id*.) Mentally, plaintiff could perform routine and repetitive tasks, make simple work-related decisions, and could tolerate occasional changes in her work setting. (*Id*.)

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 13). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully credible in light of the record evidence. (T. 15). The ALJ then determined that plaintiff was unable to perform her past relevant work. (T. 18). Relying on the VE testimony, the ALJ found, at step five, that "considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 18-20). Accordingly, the ALJ determined that plaintiff was not disabled from January 8, 2013 through the date of the ALJ's decision. (*Id*.)

V. **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1. Plaintiff's impairments meet or equal the severity of Listing 1.04. (Pl.'s Br. at 5-9) (Dkt. No. 9).

2. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 9-18).

3. The ALJ's step five determination was not supported by substantial

evidence. (Pl.'s Br. at 18-20).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 6-21) (Dkt. No. 12). For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

### VI. **LISTED IMPAIRMENT**

#### A. Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet *all* of the specific medical criteria of particular listed impairments. *Pratt v. Astrue,* 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

#### B. Application

In this case, plaintiff argues that her neck injury, which required surgical decompression of the spinal cord in August 2014, met or equaled the severity of Listing 1.04(A). (Pl.'s Br. at 6-9). In order to meet or equal the severity of this Listing, the

plaintiff must have a disorder of the spine[4] "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, Section 1.04(A). In addition, there must also be existence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine). *Id*.

Although the ALJ could have been more specific in detailing her reasons for concluding that plaintiff's condition did not satisfy this Listing, other portions of the ALJ's decision and the medical record demonstrate that her step three determination was supported by substantial evidence. *See Salmini v. Comm'r of Soc. Sec.* 371 F. App'x 109, 112 (2d Cir. 2010) ("an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' [but] the determination is still supported by substantial evidence "so long as 'we are able to look to other portions of the ALJ's decision and to clearly credible evidence . . . .'"). The only medical opinion in the record to address the applicability of Listing 1.04 came from non-examining physician Dr. Susanne Patrick-Mackinnon, who reviewed plaintiff's medical records in May 2015 and responded to an interrogatory prepared by

---

[4] Listing 1.04 gives representative examples of "disorders of the spine" including nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, Section 1.04.

9

the ALJ.[5] (T. 836-844). Dr. Patrick-Mackinnon opined that plaintiff's neck injury did not meet Listing 1.04 "because although she has pain and limited range of motion of her neck, she does not have motor weakness, muscle atrophy, sensory loss or reflex changes in her upper extremities . . ." (T. 837). This opinion is consistent with plaintiff's longitudinal medical record, which typically showed normal muscle strength and intact sensation. (T. 410, 437, 454, 466, 737, 744, 746, 767).

No treating health professional has opined that plaintiff's impairments are of listing severity, but plaintiff relies upon references in treatment notes to decreased deltoid strength, and general complaints about weakness and insensitivity to support her claim. (T. 748). In doing so, plaintiff essentially asks the court to re-weigh the medical evidence and find that the ALJ's determination was not supported by substantial evidence. Resolving conflicts in the evidence is the province of the ALJ. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. at 399); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (the court must defer to the Commissioner's resolution of conflicting evidence).

There is no question that plaintiff exhibits some of the required signs and symptoms required by Listing 1.04(A), but she has not met her burden at step three to

---

[5] "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See, e.g., House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151-52 (N.D.N.Y. 2012), (citing, *inter alia, Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."))

show that she meets all the requirements of the particular Listing. Therefore, the ALJ's determination that plaintiff's impairments did not meet or equal the severity of a Listed Impairment was supported by substantial evidence.

## VII. <u>RFC EVALUATION/TREATING PHYSICIAN</u>

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y.

11

1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Application

Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's physical impairments, particularly her need to alternate positions between sitting and standing, and her ability to lift and pull. (Pl.'s Br. at 9-14). Plaintiff also contends that the ALJ failed to consider the cumulative impact of all of plaintiff's combined impairments. (Pl.'s Br. at 16-18). This court disagrees, and concludes that the ALJ's assessment of plaintiff's physical impairments was supported by substantial

12

evidence.

In reaching the RFC determination, the ALJ gave "great weight" to portions of the opinion of Dr. Yannick Grenier, plaintiff's treating neurosurgeon. (T. 17). Dr. Grenier performed plaintiff's spinal surgery in August 2014, and completed a Medical Source Statement ("MSS") on April 7, 2015. (T. 729-735, 739-740). She opined that plaintiff needed to be able to sit, stand, or walk on an as needed basis, and was limited to occasionally lifting and carrying up to twenty pounds. (T. 731). Dr. Grenier also opined that plaintiff should never reach overhead, but could occasionally reach in other directions with either arm. (T. 732). She also found that plaintiff could frequently handle, finger, and feel with either upper extremity, and could frequently operate foot controls bilaterally. (*Id.*) In Dr. Grenier's opinion, plaintiff could never climb ladders or scaffolds, or work at unprotected heights, but could occasionally climb stairs and ramps. (T. 733-34). She should also avoid tasks that required her to balance, stoop, kneel, crouch, or crawl. (*Id.*) Dr. Grenier also recommended that plaintiff avoid exposure to dust, odors, fumes, and respiratory irritants, extreme temperatures, or vibrations. (T. 734).

The ALJ found that each of these findings were consistent with Dr. Grenier's treatment notes and plaintiff's overall medical record, and incorporated most of them into the RFC. (T. 17). The ALJ adopted a more restrictive limitation regarding plaintiff's ability to lift and carry than Dr. Grenier described, and limited plaintiff to

13

occasionally lifting ten pounds rather than twenty.[6] (*Id*.) The ALJ also expressly rejected Dr. Grenier's opinion that plaintiff was limited to part-time work, because the ALJ found no support for this restriction in Dr. Grenier's treatment notes. The only reference that she found to a reduced workweek was plaintiff's April 3, 2015 request that Dr. Grenier clear her for return to part-time work. (T. 17, 751). The ALJ thus concluded that this limitation was imposed in light of plaintiff's subjective request, rather than medical necessity. (T. 17).

The ALJ assigned "partial weight" to the March 2, 2015 opinion of Dr. Rita Figueroa, who performed a consultative examination of plaintiff. (T. 16-17, 718-727). Dr. Figueroa opined that plaintiff had moderate limitations for repetitive pushing, pulling, lifting, and carrying more than twenty pounds, and should avoid ladders or uneven surfaces due to her dizziness. (T. 16, 721-22). Dr. Figueroa opined that plaintiff could sit for thirty minutes, stand for one hour, and walk for thirty minutes at one time without interruption, for a total of four hours sitting, two hours standing, and two hours walking in an eight hour workday. (T. 723). The ALJ found that Dr. Figueroa's limitations with regard to sitting were not supported by the medical record or plaintiff's testimony. While plaintiff had expressed a need to change positions frequently due to pain, and reported that she sometimes felt dizzy when standing up from a seated position, the ALJ found that plaintiff "made no complaint about sitting or standing for

---

[6] This lifting/carrying limitation was also more restrictive than plaintiff's testimony that she could lift between sixteen and twenty pounds. (T. 77).

14

extended periods."[7] (T. 15, 303-304). Instead, the ALJ accommodated these limitations by adopting Dr. Grenier's opinion that plaintiff should be allowed to move between sitting and standing at will. (T. 17).

The ALJ also assigned "partial weight" to the previously discussed May 7, 2015 opinion of non-examining consulting physician Dr. Patrick-Mackinnon. (T. 16, 836-44). Dr. Patrick-Mackinnon based her opinion on her review of all of plaintiff's then-available medical records.[8] (T. 823). Based on those records, Dr. Patrick-Mackinnon opined that plaintiff could frequently lift and/or carry up to ten pounds, and could occasionally lift and/or carry up to twenty pounds. (T. 16, 839). She opined that plaintiff could sit for thirty minutes at one time, for a total of four hours during an eight hour workday; could stand for fifteen minutes at a time for a total of two hours each workday; and could walk for thirty minutes at one time for a total of two hours each workday. (T. 16, 840). In Dr. Patrick-Mackinnon's opinion, plaintiff could occasionally reach in all directions bilaterally, and could frequently handle, finger, and feel with both hands. (T. 841). She also opined that plaintiff should never push or pull, and never climb ladders or scaffolds. (T. 841-42). She found that plaintiff could occasionally climb stairs or ramps, balance, stoop, kneel, crouch, and crawl. (T. 842).

---

[7] The ALJ similarly discounted plaintiff's testimony that she sometimes needed to take a break and lie down while performing household chores, because it was unsupported by plaintiff's other descriptions of her daily activities and the medical record. (T. 14-15, 99-100).

[8] A short time later, the ALJ supplemented the record with three pages of treatment notes from a November 2013 neurological consultation. (T. 360-61, 845-847). Because this additional evidence does not differ materially from the evidence reviewed by the consulting physician, the ALJ may still rely on Dr. Patrick-Mackinnon's opinion. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (consulting physician's opinion was not rendered "stale" where the additional evidence was consistent with material already in the record).

She also opined that plaintiff should avoid exposure to unprotected heights and vibrations due to dizziness, and extreme temperatures that would be likely to exacerbate her neck pain. (T. 843). Applying the same reasoning as her consideration of Dr. Figueroa's opinion, the ALJ discounted Dr. Patrick-Mackinnon's opinion regarding plaintiff's ability to sit during the workday, due to a lack of support in the medical record. (T. 16).

In reaching her RFC determination, the ALJ also considered record evidence related to plaintiff's activities of daily living. (T. 15). During her consultative examination with Dr. Figueroa, plaintiff reported that she could cook five times per week, clean three times per week, do laundry twice a week, and shop twice a month. (T. 15, 719). She required assistance carrying grocery bags, and often had to sit down while doing household chores. (T. 61-62). Although plaintiff reported difficulty with stairs, she was able to regularly climb the stairs to reach her second floor apartment. (15, 60).

Plaintiff contends that the ALJ failed to consider plaintiff's multiple impairments (neck injury, back pain, migraine headaches, dizziness) in combination, but provides no support for this claim. The ALJ's decision substantiates that the ALJ considered the evidence related to all of plaintiff's relevant impairments and the corresponding treatment (including surgery, physical therapy, and medication), and reached her RFC determination after considering medical opinions that took into account the combined effect of all of plaintiff's impairments.

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*,

16

312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions, or portions thereof, that she deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's detailed analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that her RFC determination was supported by substantial evidence.

## VII. STEP FIVE DETERMINATION

### A. Legal Standard

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the

17

evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper. *Id*. at 276-277.

### B. Analysis

The ALJ asked the VE several hypothetical questions. One of these questions mirrored the ALJ's ultimate determination of plaintiff's RFC. (T. 108-112). The VE testified, based on his professional experience, that there were jobs available in the national economy that an individual with the same RFC as plaintiff would be able to perform. (T. 109). The VE also testified that such jobs existed in significant numbers, even though the overall numbers were eroded due to the RFC's restrictions on overhead and other reaching. (T. 109-111). The ALJ relied on this testimony at step five. (T. 19). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

18

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: August 2, 2018

_[signature: Andrew T. Baxter]_
Hon. Andrew T. Baxter
U.S. Magistrate Judge